# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BALZARINI,<br><br>             Plaintiff,<br><br>     v.<br><br>KYLE LEWIS, et al.,<br><br>             Defendants. | 1:13-cv-00820-LJO-BAM (PC)<br><br>ORDER DENYING APPLICATION TO PROCEED IN FORMA PAUPERIS AND REQUIRING PLAINTIFF TO PAY FILING FEE IN FULL WITHIN TWENTY-ONE DAYS (ECF Nos. 1, 2)<br><br>TWENTY-ONE-DAY DEADLINE |

Plaintiff Michael Balzarini ("Plaintiff"), inmate number B-78150, is a state prisoner proceeding pro se. Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 30, 2013. Plaintiff has failed to pay the required filing fee for this case and, for the reasons discussed below, may not proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

### I.     Summary of Complaint

Plaintiff alleges that he was to receive a pain shot in his right arm and back, but was placed on lockdown due to an emergency. Dr. G. Kalisher, a non-party, told Plaintiff that he would be re-educated for this treatment of his pain. However, Plaintiff was transferred to Corcoran State Prison and never called back for any treatment. (ECF No. 1, p. 3.)

After arriving at Corcoran State Prison, Plaintiff was seen by Dr. Wayne Ulit. Plaintiff gave a list of his requests to Defendant Ulit. The requests included chronos for a mattress, a back brace, an arm brace, an update from a lower bunk, a re-check of his "Esphocial" [sic] because he was throwing up, new shoes, blood tests, pain meds and "HCV" treatment. (ECF No.

1

1, p. 4.) Defendant Ulit reportedly said that he would get back to Plaintiff on these requests, but failed to do so. (ECF No. 1, p. 4.)

Plaintiff alleges that he made three or more attempts to receive medical treatment from Defendant Ulit and Defendant Agtarap, LVN, but these Defendants refused to take any action on his behalf. Plaintiff reported nausea, vomiting and leaking to these Defendants, but they said they could not do anything. Plaintiff explained that he was throwing up everything, including his medication, coffee and water. Plaintiff told Defendant Agtarap that he was throwing up his meds and she accused him of cheeking his meds. After his third attempt, he got his meds down and went to eat. When he entered his cell, he threw up everything. Plaintiff reported this to staff who filed false records on the computer. Plaintiff told Defendant Ulit that he was throwing up and leaking blood from his rear, but Defendant Ulit refused to do anything. (ECF No. 1, pp. 5-6.)

On November 16, 2012, after the evening meal, Plaintiff threw up blood. After giving man down, he was released to 3G Medical Clinic. A nurse had a correctional officer take Plaintiff to ACH, where he was placed into a room. Plaintiff went to the toilet, where he threw up a little blood. Plaintiff notified correctional officer B. Anderson, who freaked out when he saw all the blood. As Plaintiff turned around, he threw-up blood all over the room. The correctional officers rushed Plaintiff to the E.R. at Mercy Hospital of Bakersfield. Plaintiff was worked on for two hours in the E.R. and then taken in for surgery. The hospital doctor asked why Plaintiff did not seek medical attention sooner because he was bleeding for some time and someone should have done something because he almost bled out. Plaintiff explained that the medical staff at the institution did not want to do anything. Defendant Ulit later called Plaintiff to the clinic and apologized for not doing anything. He told Plaintiff that the next time he had this problem to come see him. (ECF No. 1, pp. 6-7.)

Defendant Ulit called Plaintiff to the clinic for 602 complaints--one against Defendant Ulit and another about not getting medical treatment and to receive pain meds, along with an ADA claim. Plaintiff told Defendant Ulit that it was illegal to give a complaint against a staff member to that staff member. Plaintiff also told Defendant Ulit that Dr. Clark said that he had to

2

1  give Plaintiff his pain meds because he is the yard doctor in charge.  Defendant Ulit did chromos
2  for a bottom-tier bunk.  Plaintiff told Defendant Ulit that he did not request this, nor did he want
3  it.  Defendant Ulit refused to take it off.  Plaintiff also told Defendant Ulit that he did not have
4  any problems going up and down stairs and that Defendant Ulit had refused his pain meds and
5  treatment.  (ECF No. 1, p. 7.)  Defendant Ulit refused to give Plaintiff his meds and said that the
6  CMO has to tell him to do it.

7   Plaintiff claims discrimination against him because of past medical problems and the
8  many complaints that he has filed to receive medical treatment and care.  Plaintiff reportedly was
9  told that he would be started on his medical treatment within 30-days after arriving at Corcoran
10 on September 25, 2012.  Plaintiff re-alleges that he gave Defendant Ulit a list of what was
11 needed, but Defendant Ulit refuses treatment of any kind.  (ECF No. 1, p. 8.)

12  On March 20, 2013, Plaintiff was taken on priority ducat to ACH-ER to be seen by Dr.
13 Clark, who is in charge of the HCV-Clinic.  Dr. Clark and the psych already cleared Plaintiff for
14 treatment.  However, Dr. Clark reported that the new CCHCS, HCV Oversight Committee had
15 denied his treatment.  Dr. Clark said that the new committee was set up to evaluate who gets
16 treatment, and for how long and the costs.  Dr. Clark reported that Plaintiff's treatment was
17 denied because it would be for 44+ weeks, would cost over $50,000, and Plaintiff was too high
18 risk.  Plaintiff claims that he is currently being denied all treatment and medications for pain.
19 (ECF No. 1, p. 9.)

20  Attached to Plaintiff's complaint are several exhibits.  According to those exhibits,
21 Plaintiff was denied Hepatitis C treatment due to his history of decompensated cirrhosis,
22 bleeding esophageal varices and history of ascites.  The exhibits indicate that Plaintiff's history
23 of decompensated cirrhosis precludes Plaintiff from receiving the Hepatitis C treatment.  (ECF
24 No. 1, Exhibit E.)  The exhibits also indicate that Plaintiff cannot receive certain types of pain
25 medications because his history of gastrointestinal bleeding.  (ECF No. 1, Exhibit D.)

26  **II.    Discussion**

27  Section 1915(g) provides that "[i]n no event shall a prisoner bring a civil action . . . under
28 this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in

1 any facility, brought an action or appeal in a court of the United States that was dismissed on the
2 grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,
3 unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

4     A review of the actions filed by Plaintiff in this district reveals that he is subject to 28
5 U.S.C. § 1915(g) and is precluded from proceeding in forma pauperis unless Plaintiff is, at the
6 time the complaint is filed, under imminent danger of serious physical injury.[1]  The
7 determination of whether Plaintiff is under imminent danger of serious physical injury is made
8 based on the conditions at the time the complaint is filed, and the allegation of imminent danger
9 must be plausible. Andrews v. Cervantes, 493 F.3d 1047, 1053-55 (9th Cir. 2007).

10     The Court has considered Plaintiff's allegations, but finds no basis to conclude that
11 Plaintiff was under imminent danger of serious physical injury at the time he filed his complaint.
12 As a practical matter, Plaintiff did not allege that he was under imminent danger of serious
13 physical injury.  The complaint also lacks any assertion that he was experiencing severe or
14 otherwise debilitating pain.  According to his complaint, Plaintiff had surgery following his
15 incidents of vomiting blood.  Although Plaintiff claims that he is not receiving medical treatment
16 or pain medications, Plaintiff has been found ineligible for Hepatitis C treatment and he cannot
17 receive certain pain medications due to his medical history.  For these reasons, Plaintiff does not
18 meet the imminent danger exception.  Accordingly, Plaintiff may not proceed in forma pauperis,
19 and must submit the appropriate filing fee in order to proceed with this action.

20     Based on the foregoing, it is HEREBY ORDERED as follows:

21     1. Pursuant to 28 U.S.C. § 1915(g), Plaintiff is denied leave to proceed in forma
22        pauperis in this action;
23     2. Plaintiff shall pay the $400.00 filing fee in full within **twenty-one (21) days** from the
24        date of service of this order; and

---

[1] This Court takes judicial notice of Balzarini v. Cambria, 1:01-cv-5896-OWW-LJO, in which Plaintiff was found to be subject to 1915(g).  In that action, the Court determined that Plaintiff had at least three district court cases that qualified as strikes and revoked Plaintiff's in forma pauperis status.  The Court identified the qualifying cases as: (1) Balzarini v. Stover, CV-94-014; (2) Balzarini v. Bank of America, CV-95-2279; and (3) Balzarini v. Hirsch, 1:00-cv-06736-OWW-LJO.  This Court also takes judicial notice of Balzarini v. Schwarzenegger, C 07-2800 MJP (dismissed for failure to state a claim).

3. If Plaintiff fails to pay the $400.00 filing fee in full within twenty-one (21) days, this action shall be dismissed without prejudice.

IT IS SO ORDERED.

Dated: **June 5, 2013** /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE