UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. MICHAEL BALZARINI,<br><br>        Plaintiff,<br><br>    v.<br><br>KYLE LEWIS, et al.,<br><br>        Defendants. | Case No.: 1:13-cv-00820-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO REVOKE IN FORMA PAUPERIS STATUS<br>(ECF No. 35)<br><br>FOURTEEN-DAY DEADLINE |

**I.    Procedural Background**

Plaintiff St. Michael Balzarini ("Plaintiff"), CDCR # B-78150 is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against Defendants Ulit and Agtarap for deliberate indifference to serious medical needs in violation of the Eighth Amendment of the United States Constitution while Plaintiff was housed at Corcoran State Prison. Plaintiff is currently housed at Mule Creek State Prison.

Plaintiff initiated this action on May 30, 2013. (ECF No. 1.) Concurrent with the complaint, Plaintiff filed an application to proceed in forma pauperis. (ECF No. 2.) On June 6, 2013, the Court denied Plaintiff's application, finding that Plaintiff was subject to 28 U.S.C. § 1915(g) and was precluded from proceeding in forma pauperis. Having considered the allegations in Plaintiff's complaint, the Court found no basis to conclude that Plaintiff was under imminent danger of serious

physical injury despite his claim that he was not receiving medical treatment or pain medications. The Court considered the exhibits attached to Plaintiff's complaint, which demonstrated that Plaintiff's history of decompensated cirrhosis precluded him from receiving Hepatitis C treatment and that he could not receive certain types of pain medications because of his history of gastrointestinal bleeding. Accordingly, the Court denied Plaintiff leave to proceed in forma pauperis in this action and ordered him to pay the $400 filing fee in full. (ECF No. 5.)

On June 24, 2013, Plaintiff filed objections and requested reconsideration of the Court's order denying his application to proceed in forma pauperis. Plaintiff alleged that he was not receiving any medical treatment or pain medications. He further asserted that he would continue to suffer harm and would die without treatment or pain medication. (ECF No. 6.)

On August 14, 2013, the Court granted Plaintiff's motion for reconsideration and determined that Plaintiff met the imminent danger exception to 28 U.S.C. § 1915(g). In so determining, the Court relied on Plaintiff's claim that he was not receiving any medical treatment or pain medications and that he would suffer harm and die without treatment. Thus, the Court vacated its prior order and granted Plaintiff leave to proceed in forma pauperis. (ECF Nos. 7, 8.)

Following screening, Defendants Agtarap and Ulit answered Plaintiff's second amended complaint on September 3, 2014. (ECF No. 32.) Thereafter, the Court issued a Discovery and Scheduling Order on September 5, 2014. (ECF No. 33.)

On October 3, 2014, Defendants filed a motion for partial summary judgment to revoke Plaintiff's in forma pauperis ("IFP") status and dismiss this action.[1] (ECF No. 35.) On October 24, 2014, Defendants filed a motion to stay discovery pending resolution of the motion for summary judgment. (ECF No. 38.) On November 13, 2015, Plaintiff filed an omnibus opposition to Defendants' pending motions, including the motion for summary judgment. (ECF No. 41.) Defendants replied on November 24, 2014. (ECF No. 43.)

The motion for summary judgment has been submitted on the papers. Local Rule 230(l).

---

[1] On October 20, 2014, the Court provided Plaintiff with notice of the requirements for opposing a motion for summary judgment. ECF No. 37; see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

**II.     Motion for Summary Judgment**

   **A. Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the non-moving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only

1  whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings

2  because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation

3  marks and citations omitted).

### B. Summary of Original Complaint Allegations

In his originating complaint filed on May 30, 2013, Plaintiff alleged that he was to receive a pain shot in his right arm and back, but was placed on lockdown due to an emergency. Dr. G. Kalisher, a non-party, told Plaintiff that he would be re-educated for this treatment of his pain. However, Plaintiff was transferred to Corcoran State Prison and never called back for any treatment. (ECF No. 1, p. 3.)

After arriving at Corcoran State Prison, Plaintiff was seen by Dr. Wayne Ulit. Plaintiff gave Defendant Ulit a list of requests, which included chronos for a mattress, a back brace, an arm brace, an update from a lower bunk, a re-check of his "Esphocial" [sic] because he was throwing up, new shoes, blood tests, pain meds and "HCV" treatment. (ECF No. 1, p. 4.) Defendant Ulit reportedly said that he would get back to Plaintiff on these requests, but failed to do so. (ECF No. 1, p. 4.)

Plaintiff further alleged that he made three or more attempts to receive medical treatment from Defendant Ulit and Defendant Agtarap, LVN, but these Defendants refused to take any action on his behalf. Plaintiff reported nausea, vomiting and leaking to these Defendants, but they said they could not do anything. Plaintiff explained that he was throwing up everything, including his medication, coffee and water. Plaintiff told Defendant Agtarap that he was throwing up his meds and she accused him of cheeking his meds. After his third attempt, Plaintiff got his meds down and went to eat. When he entered his cell, he threw up everything. Plaintiff reported this to staff who filed false records on the computer. Plaintiff told Defendant Ulit that he was throwing up and leaking blood from his rear, but Defendant Ulit refused to do anything. (ECF No. 1, pp. 5-6.)

On November 16, 2012, after the evening meal, Plaintiff threw up blood. After giving man down, he was released to 3C Medical Clinic. A nurse had a correctional officer take Plaintiff to ACH, where he was placed into a room. Plaintiff went to the toilet, where he threw up a little blood. Plaintiff notified correctional officer B. Anderson, who freaked out when he saw all the blood. As Plaintiff turned around, he threw-up blood all over the room. The correctional officers rushed Plaintiff

1  to the E.R. at Mercy Hospital of Bakersfield.  Plaintiff was worked on for two hours in the E.R. and
2  then taken in for surgery.  The hospital doctor asked why Plaintiff did not seek medical attention
3  sooner because he was bleeding for some time and someone should have done something because he
4  almost bled out.  Plaintiff explained that the medical staff at the institution did not want to do
5  anything.  Defendant Ulit later called Plaintiff to the clinic and apologized for not doing anything.  He
6  told Plaintiff that the next time he had this problem to come see him.  (ECF No. 1, pp. 6-7.)

7    Defendant Ulit called Plaintiff to the clinic for 602 complaints--one against Defendant Ulit and
8  another about not getting medical treatment and to receive pain meds, along with an ADA claim.
9  Plaintiff told Defendant Ulit that it was illegal to give a complaint against a staff member to that staff
10 member.  Plaintiff also told Defendant Ulit that Dr. Clark said that he had to give Plaintiff his pain
11 meds because he is the yard doctor in charge.  Defendant Ulit did chronos for a bottom-tier and bunk.
12 Plaintiff told Defendant Ulit that he did not request this, nor did he want it.  Defendant Ulit refused to
13 take it off.  Plaintiff also told Defendant Ulit that he did not have any problems going up and down
14 stairs and that Defendant Ulit had refused his pain meds and treatment.  (ECF No. 1, p. 7.)  Defendant
15 Ulit refused to give Plaintiff his meds and said that the CMO has to tell him to do it.

16   Plaintiff claims discrimination against him because of past medical problems and the many
17 complaints that he has filed to receive medical treatment and care.  Plaintiff reportedly was told that he
18 would be started on his medical treatment within 30-days after arriving at Corcoran on September 25,
19 2012.  Plaintiff re-alleges that he gave Defendant Ulit a list of what was needed, but Defendant Ulit
20 refused treatment of any kind.  (ECF No. 1, p. 8.)

21   On March 20, 2013, Plaintiff was taken on priority ducat to ACH-ER to be seen by Dr. Clark,
22 who is in charge of the HCV-Clinic.  Dr. Clark and the psych already cleared Plaintiff for treatment.
23 However, Dr. Clark reported that the new CCHCS, HCV Oversight Committee had denied his
24 treatment.  Dr. Clark said that the new committee was set up to evaluate who gets treatment, and for
25 how long and the costs.  Dr. Clark reported that Plaintiff's treatment was denied because it would be
26 for 44+ weeks, would cost over $50,000, and Plaintiff was too high risk.  Plaintiff claimed that he was
27 being denied all treatment and medications for pain.  (ECF No. 1, pp. 9-10.)
28

5

### C. Summary of Imminent Danger Allegations

As stated, in his original complaint, Plaintiff alleged that he was being denied all treatment and medications for pain. (ECF No. 1, p. 10.) Further, in his request for reconsideration, Plaintiff alleged that the failure to provide adequate treatment for Hepatitis C constituted imminent danger. Plaintiff asserted that the lack of adequate treatment resulted in diminished liver function, damage and fibrosis/cirrhosis. Plaintiff claimed that he was not receiving pain medication and nothing was being done for his medical condition. Plaintiff also asserted that he would die without adequate treatment and would continue to suffer additional harm. (ECF No. 6.)

### D. Statement of Undisputed Material Facts ("UMF")[2]

1. In <u>Balzarini v. Stover</u>, No. 2:94-cv-01014-UA (C.D. Cal. February 15, 1994), on February 15, 1994, the court screened Balzarini's complaint, denied Balzarini request to proceed in forma pauperis, and returned Balzarini's complaint to him on the grounds that the relief requested was beyond the court's jurisdiction. Further, the court stated that service of process could not be made because Balzarini named one-hundred Doe defendants, and Defendant Stover was not doing business with CDCR. Balzarini did not appeal the decision and the time for seeking further review expired on March 17, 1994. (Exs. A, B, and C to Defs' Mot. for Sum. Judg.)[3]

2. In <u>Balzarini v. Bank of America, et. al.</u>, No. 2:95-cv-02279-UA (C.D. Cal. April 7, 1995), on April 7, 1995, the court screened Balzarini's complaint, denied Balzarini's request for IFP, and returned Balzarini's complaint to him on the ground that the complaint did not state a cognizable federal claim. Balzarini did not appeal the decision and the time for seeking further review expired on May 8, 1995. (Defs' Ex. D, E, and F.)

3. In <u>Balzarini v. Hirsch, et. al.</u>, No. 1:00-cv-06736-OWW-LJO (E.D. Cal. October 11, 2000), the court granted Balzarini IFP status. But, on March 28, 2001, the court dismissed the action

---

[2] Plaintiff neither admitted nor denied the facts set forth by defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's partially verified opposition. <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[3] The Court may take judicial notice of its own records and court records in other cases. <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980); <u>United States v. Howard</u>, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

1 | for failure to comply with Federal Rule of Civil Procedure 8(a) and § 1983 requirements, and because inmates are not entitled to a specific rate for telephone calls. On August 13, 2001, the Ninth Circuit Court of Appeals dismissed the appeal for lack of jurisdiction, and the time for seeking further review has expired.  (Defs' Exs. G, H, I, J and K.)

   4. In <u>Balzarini v. Cambria, et. al.</u>, No. 1:01-cv-05896-OWW-LJO (E.D. Cal. June 11, 2001), the court granted Balzarini IFP status. But, on December 23, 2004, the magistrate judge recommended granting defendants' motion to revoke Balzarini's IFP status and dismiss the case because he had three previous actions that were frivolous or failed to state a claim. The magistrate judge determined that <u>Balzarini v. Stover</u>, <u>Balzarini v. Bank of America</u>, and <u>Balzarini v. Hirsch</u> were qualifying actions under 28 U.S.C. § 1915(g). The district judge adopted the magistrate judge's findings and recommendations and dismissed the action under 28 U.S.C. § 1915(g). On August 19, 2005, the Ninth Circuit Court of Appeals dismissed the appeal for Balzarini's failure to prosecute the matter, and the time for seeking further review has expired.  (Defs' Exs. L, M, N, O, P, Q, and R.)

   5. In <u>Balzarini v. Schwarzenegger, et. al.</u>, No. 3:07-cv-02800-MPH (N.D. Cal. May 30, 2007), on November 19, 2010, the court dismissed Balzarini's complaint because it failed to state a claim upon which relief could be granted and did not provide a short and plain statement of the claims Balzarini wished to present. The court granted Balzarini IFP status. Balzarini did not appeal the decision and the time for seeking further review expired on December 20, 2010.  (Defs' Exs. S, T, U and V.)

   6. In <u>Balzarini v. Goodright</u>, No. 3:09-cv-01796-MHP (N.D. Cal. April 23, 2009), on October 7, 2009, the court dismissed the complaint because it failed to state a claim upon which relief could be granted. Balzarini had applied for IFP status, which the court granted. Balzarini did not appeal the decision and the time for seeking further review expired on November 6, 2009.  (Defs' Exs. W, X, Y, Z, AA and BB.)

   7. In <u>Balzarini v. Page, et. al.</u>, No. 5:13-cv-00493-UA-AN (C.D. Cal. March 18, 2013), Balzarini requested IFP status. But, on April 3, 2013, the court denied Balzarini's request for IFP status because "Balzarini is barred from proceeding IFP because he is a three-striker and is not under imminent danger of serious physical injury." The court determined that leave to amend would be futile

and dismissed the action as being "frivolous, malicious or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g)." Balzarini did not appeal the decision and the time for seeking further review expired on May 3, 2013. (Defs' Exs. CC, DD, and EE.)

8.  In <u>Balzarini v. Page, et. al.</u>, No. 2:13-cv-06136-UA-AN (C.D. Cal. August 21, 2013), on September 10, 2013, the court issued its Order re Leave To File Action Without Prepayment Of Full Filing Fee. The court refused Balzarini's request for IFP status because "Plaintiff is barred from proceeding IFP because he is a well-known 3-striker. See 4/3/13 Order denying IFP Request in EDCV 13-493. Plaintiff is improperly attempting to use 'imminent danger' exception preserved for 28 U.S.C. § 1915 to bring what is actually a habeas corpus claim to challenge the legality of his conviction and sentence." The court determined that leave to amend would be futile and dismissed the action as being "frivolous, malicious or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g)." The court also determined that this denial constituted another qualifying action under 28 U.S.C. § 1915(g). <u>Id.</u> Balzarini did not appeal the decision and the time for seeking further review expired on October 10, 2013. (Defs' Exs. FF, GG, and HH.)

9.  The California Department of Corrections and Rehabilitation ("CDCR") maintains health records for each inmate. CDCR uses a number of forms and procedures to record all the medical care that each inmate receives. One of the forms used by CDCR is the Medication Reconciliation Record. This form records a physician's orders for medication for an inmate. It is signed by the ordering physician. It is also signed by the nurse or other medical technician who carries out the physician's orders by delivering the order to the pharmacy. (Defs' Ex. II, Declaration of Nicole Teale ("Teale Dec.") ¶ 3.)

10. A Medication Administration Record is used to record the delivery of medicine to the inmate. For medications that are designated as "KOP," or Keep On Person, the inmate signs and dates the form to document that he received the medication. If an inmate refuses the medication, then medical personnel document the refusal, and then sign and date the form. (<u>Id.</u> at ¶ 4.)

11. A Refusal of Examination and/or Treatment documents that an inmate refused significant medical care. This form is either signed by the inmate who refuses the treatment, or if the

1  inmate refuses to sign, it is signed by two medical personnel who witnessed the inmate's refusal. (Id.
2  at ¶ 5.)
3      12.   A Nonformulary Drug Request is used when treating medical personnel want to
4  prescribe a medication that is not on the preapproved list of medications. That form is signed by a
5  doctor, physician's assistant or other authorized medical personnel, and reviewed by the supervising
6  medical authority. (Id. at ¶ 6.)
7      13.   A Physician's Order is used by the physician at the time he sees an inmate during a
8  medical appointment and makes orders for some type of follow-up care. The form is signed and dated
9  by the physician. It is also signed and dated by a nurse or other medical technician to indicate that the
10 physician's orders have been carried out. (Id. at ¶ 7.)
11     14.   A Chronic Care Progress Note or Medical Progress Note is first completed by or
12 dictated by the treating physician when he sees an inmate for a medical appointment. It documents the
13 inmate's condition during an appointment, what medical concerns an inmate has, and the medical care
14 provided to the inmate. It is signed by the physician who provided the care. The physician's
15 handwritten note or dictation is then transcribed by a medical technician into a typewritten form. (Id.
16 at ¶ 8.)
17     15.   On May 16, May 29, June 11, June 20 and June 25, 2013, Balzarini received his
18 prescribed medications, which included omeprazole, folic acid, acetaminophen, spironolactone and
19 propranolol. (Id. at ¶ 4; Defs' Ex. JJ.)
20     16.   On May 16 and 28, 2013, medical staff issued orders regarding prescriptions for
21 omeprazole, folic acid, Tylenol, and gabapentin for Balzarini. (Defs' Ex. II at ¶ 3; Defs' Ex. KK.)
22     17.   On May 16 and 28, 2013, medical staff issued a request to prescribe special medication
23 for Balzarini that was not on the preapproved list of medications. (Defs' Ex. II at ¶ 6; Defs' Ex. LL.)
24     18.   On May 28, 2013, Balzarini was seen for a medical appointment. At that appointment,
25 he was examined, his medical condition was discussed, and a treatment plan was created. In addition,
26 medical staff issued orders for follow up care. (Defs' Ex. II at ¶¶ 7-8; Defs' Exs. MM, NN.)
27     19.   On May 23, 2013, Balzarini refused his prescriptions for propranolol and
28 spironolactone. (Defs' Ex. II at ¶¶ 4-5; Defs' Ex. OO, PP.)

**III. Discussion**

A. Standards Governing IFP Status

28 U.S.C. section 1915(g) provides that "[i]n no event shall a prisoner bring a civil action . . . if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Defendants have the burden to "produce documentary evidence that allows the district court to conclude that Plaintiff has filed at least three prior actions that were dismissed because they were 'frivolous, malicious or fail[ed] to state a claim.' " Andrews v. King, 398 F.3d 1113, 1120 (9th Cir. 2005) (quoting § 1915(g)). If Defendants meet their initial burden, then it is Plaintiff's burden to explain why a prior dismissal should not count as a strike. Id. If Plaintiff fails to meet that burden, then IFP should be revoked. Id.

B. Analysis

Defendants Ulit and Agtarap have met their initial burden to demonstrate that Plaintiff has brought three or more actions that were dismissed as frivolous, malicious or failed to state a claim prior to initiating this action.[4] (UMF 1-3, 4-7.) The burden therefore shifts to Plaintiff to explain why these prior dismissals should not count as strikes.

In this instance, Plaintiff does not dispute that he has brought three or more actions that were dismissed as frivolous, malicious or failed to state a claim. Rather, Plaintiff denies that the cases cited by Defendants Ulit and Agtarap are his. Plaintiff contends that his correct name is "St. Michael Doc Balzarini" and anything else is not him. (ECF No. 41, p. 16.)

Despite Plaintiff's attempt to distance himself from the actions cited by Defendants, the qualifying cases relied upon show not only Plaintiff's surname, but also his unique California prison identification number—B-78150. (UMF 1-8.) Plaintiff cannot deny that these are his actions.[5]

---

[4] In the initial order denying Plaintiff's application to proceed IFP, this Court relied on five of the same cases submitted by Defendants in support of their current motion. See ECF No. 5 (Order filed on June 6, 2013).

[5] Plaintiff is admonished that unwarranted denials of factual contentions may result in the imposition of sanctions pursuant to Federal Rule of Civil Procedure 11. Rule 11 provides, "[b]y presenting to the court a pleading written motion, or other

10

Accordingly, the Court finds that Plaintiff has accumulated more than three strikes; that is, he has brought more than three actions that were dismissed as frivolous, malicious or failed to state a claim. Thus, the issue before the Court is whether Plaintiff was in imminent danger of serious physical injury at the time of filing this action. Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007).

The determination of whether Plaintiff was under imminent danger of serious physical injury is made based on the conditions at the time the complaint is filed. Thus, it is the circumstances at the time of the filing of the complaint that matter for purposes of the imminent danger exception. Andrews, 493 F.3d at 1053-54. There must be an "ongoing danger" in order for the imminent-danger exception to apply. Id. at 1056-57. The "common definition of 'imminent' . . . does not refer only to events that are already taking place, but to those events 'ready to take place' or 'hanging threateningly over one's head.'" Id. at 1056.

As noted above, Plaintiff claimed that the failure to provide him with adequate treatment for Hepatitis C constituted imminent danger. Insofar as Plaintiff argues that he is at risk of death from not being treated for Hepatitis C, the record before the Court demonstrates that Plaintiff was not a candidate for Hepatitis C treatment at the time he initiated this action due to decompensated cirrhosis. (ECF No. 1, Ex. E; Defs' Ex. MM.)

Plaintiff also alleged that he was being denied medical treatment and pain medications at the time of filing his complaint on May 28, 2013. However, according to the undisputed evidence presented by Defendants, Plaintiff received medical care and medications, including pain medication, in the time period shortly before and after the filing of his complaint. (UMF 15-18.) Indeed, Defendants have presented undisputed evidence that Plaintiff was seen by medical staff on May 28, 2013, the date Plaintiff signed the complaint. At the time, medical staff were concerned, not because prison doctors refused treatment or medication, but because Plaintiff himself refused needed medication. During the examination, Plaintiff reportedly was "taking the medication right now."

---

paper…an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). If Rule 11(b) has been violated, the court may impose an appropriate sanction on any party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1),(3). Here, the evidence of Plaintiff's prison number clearly demonstrates that the cited cases were filed by Plaintiff. As a result, Plaintiff cannot, in good faith, deny such factual evidence.

(UMF 18; Defs' Ex. MM.) Additionally, Plaintiff's pain medication was continued and the treating physician ordered a non-formulary prescription of gabapentin for the neuropathic nature of Plaintiff's pain. The treating physician also noted that Hepatitis C treatment had previously been denied due to decompensated cirrhosis. (Defs' Ex. MM.) To the extent Plaintiff disagrees with prison medical personnel about the course or adequacy of any treatment he was receiving does not establish imminent danger. See, e.g., Thomas v. Ellis, 2015 WL 859071, *3 (N.D. Cal. Feb. 26, 2015) (imminent danger exception does not apply where the prisoner is receiving medical treatment but disputes the quality of the treatment he is receiving); Stephens v. Castro, 2006 WL 1530265, *1 (E.D. Cal. May 31, 2006) (disagreement with prion personnel about course of treatment does not establish an imminent danger of serious physical injury under Section 1915(g).); Cross v. Pelican Bay State Prison, 1998 WL 754609, *1 (N.D. Cal. Oct. 26, 1998) (disagreement with specific treatment prisoner had received and was receiving insufficient to establish imminent danger).

Accordingly, the Court finds that Plaintiff was not under imminent danger of serious physical injury at the time he filed his complaint. The Court further finds that Defendants are entitled to partial summary judgment, Plaintiff's IFP status should be revoked and this action should be dismissed without prejudice.

### III. Conclusion and Recommendation

For the reasons stated, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for partial summary judgment, filed on October 3, 2014, be granted;
2. Plaintiff's IFP status be revoked; and
3. This action be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 13, 2015**                            /s/ Barbara A. McAuliffe
                                                              UNITED STATES MAGISTRATE JUDGE